STATE ex rel J. G. SHENNONHOUSE v. J. S. WITHERS AND
THE BOARD OF COMMISSIONERS OF
MECKLENBURG COUNTY.

*Action in Nature of Quo Warranto—Office of Cotton Weigher —Election at Joint Meeting of Two Separate Bodies— Majority Vote of Members Present—Leave of Attorney General to Relator to Sue—Demand on Occupant of Office for Possession of Office.*

1. Where, before the trial of the action, a relator obtained the consent of the Attorney General to prosecute the same in his name, and properly indemnified the State against the cost and expense of the action, it is immaterial that such consent was not applied for and obtained before the issuance of the summons.

2. Where, by a Statute (Ch. 30, Private Acts of 1885) it was made the duty of the Mayor and Board of Aldermen of the City of Charlotte and the County Commissioners of Mecklenburg County, in joint session and presided over by the Mayor of the City, on the first Monday in September of each year, to elect a cotton weigher for said City, the fact that the meeting of the Mayor and Board of Aldermen on such day was not a regular meeting of the Board does not invalidate the action of such meeting, since it was the duty of the Mayor to convene the Board of Aldermen in special session on the day fixed by the Statute for such election.

3. The failure of one member of a Board of Aldermen, consisting of twelve members, to attend a meeting of the Board does not invalidate the action taken at such meeting by the other Aldermen.

4. It is not necessary that one who claims an office shall make a demand upon the occupant for its surrender before bringing his action to recover it, especially when the incumbent claims the right to the office-and its emoluments.

5. Where the power of appointment to an office is conferred by Statute upon two or more bodies and no provision for a quorum is made, nor is it provided that they shall act separately, the rule is that all the members of all the bodies must meet together for consultation, or all must be *notified so to meet*, and thereupon, if the majority of those present constitute a majority of all the members of all the bodies, they may proceed to make the appointment

6. Chapter 30, Private Acts of 1885, provides that "the Mayor and Board of Aldermen of the City of Charlotte and the County Commissioners of the County of Mecklenburg, in joint session and presided over by the Mayor of the City, on the first Monday in September 1885 and every year thereafter, shall elect one Cotton-weigher for the City of Charlotte." The Act does not prescribe the quorum or whether a majority shall govern or place any check or limitation in favor of the members of either Board or of the component parts of either Board. The Mayor and eleven out of the twelve mem ers of the Board of Aldermen convened on the first Monday of September 1897 in the City Hall (where the previous joint meetings had been held) and sent a communication and notice to the Board of County Commissioners (composed of three members and then in session at the Court House) to the effect that the Mayor and Board of Aldermen were then in session, in the City Hall, in pursuance of the Act of 1885, for the purpose of electing a cotton weigher and that, although the previous annual joint meetings for such purpose had been held in the City Hall, the Board of Aldermen would meet at any other place

121—48

the Board of Commissioners might prefer and indicate.   The Board of Commissioners having declined to attend on the ground that one of the Aldermen was absent from the City and that there was no regular or called meeting of the Mayor and Boa.d of Aldermen then in session, the Mayor and the eleven Aldermen proceeded to the election of a cotton weigher, whereupon S , having received seven of the eleven votes was declared elected: *Held,* in an action by S to recover the office from W., the incumbent, and for a mandamus to compel the Board of Commissioners to induct him into office, that the election of the relator was valid notwithstanding the absence of the Board of Commissioners from the meeting.

CIVIL ACTION for the recovery of the office of cotton weigher for the City of Charlotte, brought by the relator against the defendants and tried before *Hoke, J.,* and a jury at Fall Term, 1897, of MECKLENBURG Superior Court on an agreed statement of facts (which are summarized in the opinion of Montgomery, J.) Upon the facts agreed, his Honor directed the jury to answer the issues "no," and gave judgment against the plaintiff who appealed.

*Messrs. Jones & Tillet* and *Osborne, Maxwell & Keerans,* for plaintiff (appellant).

*Messrs. Burwell, Walker & Cansler* and *Clarkson & Duls,* for defendants.

MONTGOMERY, J.:.   The first Section of Chapter 30 of the Private Laws of 1885, provides for the election of a cotton weigher for the City of Charlotte in the following language: "That the Mayor and Board of Aldermen of the City of Charlotte, and the County Commissioners for the County of Mecklenburg in joint session, and presided over by the Mayor of the City, on the first Monday in September, one thousand eight hundred and eighty four, and every year thereafter, shall elect one cotton weigher for the City of Charlotte . . ." At eleven o'clock a. m. on the 1st Monday in September of the present year eleven of the twelve members of the Board of Aldermen met with the Mayor in

the City Hall, in the Hall of the Board of Aldermen, and the Mayor sent and had delivered to the Chairman of the Board of Commissioners, composed of three members, that Board being in regular session, a communication and notice to the effect that the Board of Aldermen were then in session, in the City Hall, in pursuance of the Statute of 1885 for the purpose of electing a cotton weigher for the City of Charlotte. It was further stated in the communication that the joint meetings of the two bodies for the election of a cotton weigher had heretofore been held in the City Hall, but that if the Board of Commissioners should prefer, the Board of Aldermen would meet with them at any place the Commissioners might indicate. The Commissioners in reply sent a verbal message to the Mayor and Aldermen declining to meet them, alleging as a reason for the declination "that one of the twelve Aldermen was absent from the City of Charlotte and that there was no regular or called meeting of the Mayor and Board of Aldermen then in session, and suggesting that the two Boards should have a joint meeting for the purpose of electing a cotton weigher on the 20th day of September at an hour and place to be designated and agreed upon." Upon receiving the message from the Board of County Commissioners, the Mayor and eleven Aldermen proceeded to the election of a cotton weigher, in which election seven of the Aldermen voted for the plaintiff and four of them for the defendant for that place, and the Mayor declared the plaintiff elected. The plaintiff at the proper time executed and tendered to the Board of Commissioners a bond in proper form and with sufficient sureties, which which was declined without examination or inspection, the members of the Board stating that they had been *advised* that the plaintiff had not been legally elected cotton weigher.

There was one of the Aldermen absent from the town at the time of the election. The plaintiff, before he brought

this action, made no demand on the defendant, the present incumbent, for the place and had taken no oath of office, and at the commencement of the action did not have the consent of the Attorney General to bring the action but has since obtained from that officer a paper writing ratifying and approving the bringing of the action.

His Honor charged the jury that they should find the first issue, "Is the relator of plaintiff of right entitled to the office of cotton weigher in the City of Charlotte?" No; and the second issue, "Have the Board of Commissioners wrong-fully refused to take bond of relator of plaintiff as cotton weigher and to induct him into his office?" No. The defendant's objection that the action was brought without the consent of the Attorney General is without force, since it appears that the consent of that officer was obtained before the trial of the action. The application to the Attorney General to bring such an action could *not have been refused*, and no harm has been done in this case, for the plaintiff has given satisfactory security to indemnify the State against all cost and expenses which may accrue in consequence of bringing the action. The plaintiff's action in this respect is analagous to that of a suitor who should procure a summons to be issued by the Clerk without giving the bond required by Section 209 of *The Code*, and who afterwards and before trial filed the bond required by the Statute. *Russell* v. *Saunders*, 48 N. C., 432; *McMillan* v. *Baker*, 92 N. C., 110.

The objection by the defendant that the day on which the Mayor and Board of Aldermen met was not a regular meeting of the Board, is of no consequence. The Act of 1885 made the first day of September the day for the election of cotton weighers of Charlotte, and it was the duty of the Mayor to convene the Board of Aldermen in special session for that purpose. That day, too, doubtless was named by the General Assembly for the convenience of the

Commissioners, it being their regular monthly meeting day.

Nor is there any more force in the objection that one member of a Board of Aldermen, out of twelve, was out of place. The law surely does not contemplate that the failure of one member of a Board consisting of twelve, to attend a business meeting would be fatal to its action.

Another objection on the part of the defendant was that the plaintiff made no demand upon the defendant for the office. No demand was necessary. In the language of the opinion in *Heath* v. *Morgan*, 117 N. C., 504, "the reason why a demand in any case is required is that the defendant may surrender the property without the trouble and cost of a suit, and when it appears as in this action that defendant still claims the right to hold the property, no demand is necessary."

The main question in the case is whether it was necessary to the validity of the plaintiff's election that the Board of Commissioners as an organized body should have participated in the meeting of the first of September, when the seven Aldermen cast their ballot for him. It was conceded by the counsel of the plaintiff in the argument here that under the law as it is in England the presence of the Board of Commissioners at some stage of the proceedings would have been necessary. But they contended that such ought not to be the rule here, on general principles, and that it has also been displaced by a statutory one. *Code*, Section 3765, sub Sec. 2. That section is in the following language: "All words purporting to give a joint authority to three or more public officers or other persons shall be construed as giving such authority to a majority of such officers or other persons, unless it shall be otherwise expressly declared in the law giving the authority."

We have arrived at the conclusion that the English rule on this question should not prevail in North Carolina, as being inconsistent with the genius of our institutions. The

English adjudications are based on that people's idea of the nature and character of their municipal corporations, and was adopted by them in imitation of their form of government. It is well said in *Whitehead* v. *People*, 26 Wend. 643, that "The loyal subjects of the British Crown (in their view of corporations) discover a government within a government, and amuse themselves by drawing analogies between their constitution and that of their own boasted Empire. In the Mayor they think they see their sovereign, in the Aldermen the House of Lords, and in the commonalty the House of Commons, and they are pleased to think that, as a valid law requires the concurrence of the Crown and both Houses of Parliament, so these branches of the little Empire must all be present and act, or else their doings are void." But with us these corporations are created for practical business purposes and to carry out the intentions of our people—the intentions of a people who govern themselves in respect to that part of the government committed to their jurisdiction.

The Act of 1885 authorizing this election provides for a *joint* meeting of the Board of Aldermen and County Commissioners to be presided over by the Mayor. There is nothing in the statute which fixes the rule of a quorum, nor does it provide whether a majority should govern, nor is there a word placing any check or limitation in favor of the members of either Board or of the component parts of either Board. The contemplated meeting is one in which all the individuals of each Board are blended without order in one joint body, and nothing is dependent upon the concurrent action of each Board. The Board of Commissioners is not even authorized by the statute to participate in the organization of the meeting, for its presiding officer is fixed under the terms of the statute. The Board of Commissioners had a sufficient notice of the meeting sent to them by the Mayor, apprising them of the meeting provided for under the statute, and of the place where the meetings had been

usually held for years. The notice contained the further statement that, if the usual place of meeting was not agreeable to the Commissioners, the Commissioners might indicate the place. The reasons assigned by the Commissioners for their refusal to comply with the law were no reasons. By their conduct they intended a deliberate refusal on their part to comply with the law—a law as clear as light, a law that admitted of no two constructions and which was enacted for the purpose of having carried out one of the fundamental ideas of our system of government, the right of the people to choose their own officers at stated periods and providing a means against perpetuities in office. Can it be seriously thought that our laws would permit this Board of Commissioners by its wilful refusal to attend this meeting, after having received proper notice, to thwart this act of legislation and thereby enable the present incumbent to hold over, thereby creating confusion in public affairs and shocking the common sense of justice of our people? If we were without precedent in this matter we would be compelled to take the view we have taken of this case for the reasons assigned. But we are not without precedent. In Throop on Public Officers, Section 116, the following doctrine is announced: "Where the power of appointment to an office is conferred by statute upon two or more bodies, and no provision for a quorum is made, nor is it provided that they shall act separately, the rule is that all the members of all the bodies must meet together for consultation, *or all must be notified so to meet,* and thereupon if the majority of those present constitute a majority of all the members of all the bodies, they may proceed to make the appointment." And in the case of *People* v. *Walker,* 24 Barb. 304, the statute in New York being in substance like the provisions in our Act of 1885 as to the manner of meeting of the Boards, the principal announced in Throop, *supra,* is affirmed.

There was error in the instructions of the Court to the jury, and but for the verdict of the jury we would reverse the judgment and give judgment for the plaintiff.

New trial.